376 So.2d 539 (1979)
Franklin David McELHANEY, Plaintiff-Appellant,
v.
BELDEN CORPORATION, Defendant-Appellee.
No. 7141.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
*540 Fuhrer & Flournoy, George A. Flournoy, Alexandria, for plaintiff-appellant.
Gaharan & Wilson, Joseph Wilson and Paul Boudreaux Jr., Jena, for defendant-appellee.
Before GUIDRY, FORET and SWIFT, JJ.
GUIDRY, Judge.
In this workmen's compensation action, plaintiff, Franklin D. McElhaney, brought suit seeking to recover medical travel expenses and additional disability benefits, allegedly attributable to a work-related knee injury, from his former employer, Belden Corporation, the defendant herein. Plaintiff also seeks to recover penalties and attorney's fees. The trial court rendered judgment in favor of defendant, rejecting plaintiff's demand. From this judgment, plaintiff has appealed.

FACTS
Appellant's claim is the result of an injury to his right knee sustained on February 19, 1976, while working for the Jena Wire and Cable Company, a division of Belden Corporation. Plaintiff was employed as a wire stranding operator and was still in his training phase when he accidently struck his right knee on a steel pallet. From the impact to the knee, plaintiff suffered an *541 osteochondritis dissecans, which is a fragmentation of the femoral condyle just above the knee joint.
After the injury, plaintiff was under the care and treatment of an orthopedic surgeon, Dr. John T. Weiss, until his release on November 11, 1976. During this period plaintiff underwent surgery and a program of physical therapy attempting to rehabilitate his injured knee.
Upon the recommendation of Dr. Weiss, plaintiff attempted to return to his work as a wire stranding operator in the first week of November, 1976. However, due to the substantial bending, squatting, and lifting required by his job, plaintiff had to discontinue working after seven days because of the increasing pain and discomfort in the right knee.
Plaintiff was next seen by Dr. Weiss on November 11, 1976. Presumably, following this examination Dr. Weiss concluded that plaintiff had received maximum medical improvement, for he was discharged with the recommendation that he seek a lighter type of work or vocational rehabilitation. Plaintiff was last seen by Dr. Weiss on March 3, 1977 for purpose of re-evaluation. This evaluation revealed plaintiff's condition to be unchanged from that of November 11, 1976 and Dr. Weiss made no recommendations at that time different from those made in November. In the latter connection Dr. Weiss testified as follows:
"Well it was my impression that on any squatting he still had some discomfort, and the answer to your question would have to be on the basis of how much could he tolerate some discomfort how many times a daywouldn't it? Plus the fact that probably all this would also increase his chances of traumatic arthritis in over-usage. Oh I would say that if he had to squat two or three times a day it probably wouldn't make much difference I mean but I think if he starts squatting maybe once every hour, I think it would be giving him troubles, however, I would as I went back further in this report and recommended to the man that he go to Vocational Rehab or change jobs because of the potential problem with traumatic arthritis in the futureI would still say that." (Tr. pg. 41)
Plaintiff was also seen, for purpose of evaluation only, by Dr. J. C. Passman. Dr. Passman, who saw plaintiff at defendant's request, was of the opinion that at the time of his examination, i. e., December 2, 1976, plaintiff had made maximum medical improvement and remained with a 25% permanent-partial disability of the right knee. Although Dr. Passman opined that plaintiff could return to work he acknowledged that plaintiff might develop a degenerative arthritis in the knee with the additional possibility of a "loose body in the future".
The above summarizes all of the medical evidence adduced at trial.
Plaintiff did not return to work for Belden Corporation and thereafter moved to Indiana. After alternating between unemployment and part-time jobs, on September 5, 1978, plaintiff found full-time employment as a shoe salesman, and at the time of trial was earning the federal minimum hourly wage rate.[1]
Before trial, plaintiff's medical expenses in the amount of $2,949.25 were paid by defendant. Defendant-appellee also had paid weekly compensation benefits in the amount of $63.66 per week for a period of 124 weeks, the payments totaling $7,902.95. Upon the alleged receipt of a negative medical report, i. e., that plaintiff could return to work, all compensation benefits to plaintiff were terminated by defendant on August 1, 1978. The alleged medical report is the supposed result of a re-evaluative physical examination of plaintiff. The examination was performed in Chicago by a *542 Dr. Dyer sometime in 1978 prior to August 1, at the behest of defendant.
Plaintiff filed suit September 7, 1978 to recover his expenses incurred travelling by car to the Chicago examination, a round trip of 210 miles; workmen's compensation for total and permanent disability; and, statutory penalties and attorney's fees. In his petition, although plaintiff alleged that his earnings at time of accident were such that 662/3% of his average weekly wage would entitle him to receive compensation in the amount of $63.66 per week, at trial he introduced evidence tending to show that his average weekly earnings at time of injury were such that his proper compensation rate was $78.67 per week. This evidence was initially objected to by defendant, however, the objection was not pursued and the evidence was admitted thus enlarging the pleadings. After trial on the merits, the trial court concluded that proper computation of plaintiff's average weekly wage at time of injury entitled him to compensation at the rate of $63.44 per week (a sum less than that paid weekly); that plaintiff had been paid weekly benefits exceeding that which was due; and, that he was entitled to no further relief.
On appeal plaintiff makes the following assignments of error:
(1) The district court erred in determining that plaintiff was not partially disabled under LSA-R.S. 23:1221(3).
(2) The district court erred in not computing plaintiff's wages on an hourly basis in accordance with LSA-R.S. 23:1021(7)(a).
(3) The district court erred in not awarding penalties and attorney's fees.

DISABILITY DETERMINATION
The occurrence of the accident and injury in the course and scope of a covered employment is not disputed. The conflict relates to the sufficiency of amounts previously paid and whether additional benefits are due.
Disability compensation payments are made in accordance with the provisions of LSA-R.S. 23:1221 et seq. LSA-R.S. 23:1221 provides a schedule of compensation based on statutorily defined disabilities. The classification of disability is necessary for an appropriate award under the statute.
Plaintiff contends that during the period from February 19, 1976 to August 1, 1978 he was totally disabled within the purview of LSA-R.S. 23:1221(1) and subsequent to the latter date he remains partially disabled and is entitled to further payments in accord with the provisions of LSA-R.S. 23:1221(3). Defendant does not dispute that plaintiff was totally disabled during the period for which compensation was paid but argues that his disability did not extend beyond August 1, 1978. Alternatively he argues the applicability of LSA-R.S. 23:1221(4)(h), (o), and Section 1223, for the proposition that no further benefits would be due to plaintiff and in the further alternative, defendant contends that if plaintiff is partially disabled under LSA-R.S. 23:1221(3), then the denial of benefits was proper as plaintiff's average weekly wage as a shoe salesman exceeded the average weekly wage plaintiff received at date of injury.
LSA-R.S. 23:1221 provides in pertinent part:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and *543 whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976; and not beyond a maximum of four hundred twenty-five weeks for such partial disability resulting from injury occurring on and after September 1, 1976, and on or before August 31, 1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3).
(4) In the following cases, the compensation shall be as follows:
. . . . .
(h) For the loss of a leg, sixty-six and two-thirds per centum of wages during one hundred seventy-five weeks.
. . . . .
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."
The language of the trial court's decision on the partial disability issue is as follows:
"After hearing the testimony and receiving the depositions of record from Dr. Weiss (Ex. J-10) and the report of Dr. Passman (Ex. J-11), this Court is of the view plaintiff has been paid weekly benefits that exceed those which he would be due."
Thus, the trial court made no definitive statement as to the statutory classification of plaintiff's disability; however, it is implicit from the given reasons for judgment that the trial court found that plaintiff was "non-disabled" after receiving the last disability payment and that the total compensation paid by defendant, $7,902.95, obviates further recovery for a specified loss under LSA-R.S. 23:1221(4)(h), (o), 1223.[2]
*544 The findings of the trial judge are not to be disturbed unless found to be clearly erroneous. With the foregoing principle firmly in mind we have carefully examined the record and find that we are unable to agree that plaintiff had overcome his work disability in light of LSA-R.S. 23:1221(3), defining "partial disability". For the trial court to be correct, plaintiff would have had to have been able to return to the duties he was customarily engaged in when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training and experience. The medical and other evidence adduced at trial clearly indicates otherwise.
At the time of injury plaintiff was eighteen years old and had not completed high school. The record does not reflect plaintiff having any specialized or vocational training, rather it shows that plaintiff was hired as a non-skilled laborer. Plaintiff had completed 28 days of training as a wire stranding operator and was engaged in performing the duties of that position when he sustained his injury. The evidence clearly indicates that a wire stranding operator's duties require substantial bending, squatting and lifting. The evidence convinces us that plaintiff is unable to perform the required bending, squatting and lifting without pain and discomfort; and as the medical evidence indicates, without increasing the likelihood of developing a further disabling degenerative arthritic condition. Plaintiff's condition, as properly noted by the trial court, does not preclude him from engaging in gainful employment.
We are convinced by the evidence that plaintiff's situation falls squarely within the definition of "partial disability" as the legislature has defined it in LSA-R.S. 23:1221(3), as amended by Act 583 of 1975. Under the clear wording of the amended statute, if an employee is prevented from returning to his former employment or work of a similar character but is not prevented from engaging in gainful activity at some job, he is considered partially disabled. See Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3rd Cir. 1978); and LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir. 1977).

COMPUTATION OF BENEFITS
Benefits payable to one temporarily totally disabled are fixed at sixty-six and two-thirds per centum of wages during the period of disability. (LSA-R.S. 23:1221(1)).
Benefits payable to one partially disabled under LSA-R.S. 23:1221(3), are fixed at sixty-six and two-thirds per centum of the difference between the wages which he was earning at the time of injury and any lesser wages which he actually earns in any week thereafter in any gainful occupation for wages, during the period of disability, but not beyond a maximum of four hundred weeks, subject to a credit in favor of the employer for payments already made.
"Wages" as used above is statutorily defined in LSA-R.S. 23:1021(7), which provides:

"(7) `Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; (b) If the employee is paid on a monthly basis, his monthly salary divided by four; (c) If the employee is employed at an annual salary, his annual salary divided by fifty-two; and (d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six *545 week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four."

During the period of plaintiff's temporary total disability he was paid compensation at the rate of $63.66 per week. This rate of compensation was computed by calculating plaintiff's average weekly wage employing the provisions of LSA-R.S. 23:1021(7)(d). Plaintiff contends that during such period he was entitled to compensation at the rate of $78.67 per week, in that his average weekly wage should have been computed by employing the provisions of LSA-R.S. 23:1021(7)(a). Likewise, plaintiff contends that for purpose of calculating payments due him under R.S. 23:1221(3) his average weekly wage while employed by Belden should be computed employing the provisions of R.S. 23:1021(7)(a). Defendant contends otherwise and argues that when average weekly wages are computed under R.S. 23:1021(7)(d) plaintiff is not entitled to further payment in that his average weekly wage as a shoe salesman exceeds the average weekly wage he earned while employed by Belden.
The trial court calculated average weekly wages using LSA-R.S. 23:1021(7)(d) finding plaintiff's weekly average pay at injury to be $95.16, and the appropriate weekly compensation to be $63.44.
In our view the learned trial judge erred in computing plaintiff's average weekly wage under R.S. 23:1021(7)(d).
The following facts are undisputed. Plaintiff was employed as a wire stranding operator and was still in his training phase when he was injured. As a trainee, plaintiff was employed at a fixed hourly rate, plus twenty percent of such hourly rate as a "bonus", for each hour worked. The sum paid plaintiff was a guaranteed amount per hour worked regardless of how much wire was produced. This guaranteed amount per hour was paid to each trainee during the approximate six week training period. In contrast, a trained operator receives a base hourly rate plus an incentive "bonus", which latter varies dependent upon work output. Under these admitted facts it cannot be said that plaintiff was employed on a "unit, piecework, commission, or other basis", as described in R.S. 23:1021(7)(d). Quite to the contrary, at the time of plaintiff's injury he was receiving the guaranteed sum of $2.95 per hour for each hour worked regardless of his work output. Under such circumstances, in our opinion, plaintiff was paid on an hourly basis and his average weekly wage at the time of injury should have been computed by employing the provisions of R.S. 23:1021(7)(a).
Considering the above and the evidence in the record we calculate plaintiff's average weekly wage at the time of injury to be the sum of $118.00 and his appropriate weekly compensation rate at 2/3rds of this amount to be the sum of $78.67 per week.
For the 124 week period for which compensation was paid, plaintiff is entitled to be paid the additional sum of $15.01 per week or the total sum of $1,861.24 plus interest on such sum from the due date of each payment until paid.
With regard to plaintiff's entitlement to benefits under R.S. 23:1221(3), the evidence reflects that for a period of five weeks immediately following August 1, 1978 plaintiff was unemployed. During this five week period he is entitled to the sum of $78.67 per week plus interest on each such payment from its due date until paid. The evidence reflects that beginning September 5, 1978 through the date of trial plaintiff was and has been continuously employed as a shoe salesman working a forty hour week earning at least the federal minimum wage. The exact amount of plaintiff's weekly earnings since September 5, 1978 is not set forth in the record with any specificity, although plaintiff testified, without corroboration that at the time of trial he was earning $106.00 per week (40 hours X $2.65). Considering the above plaintiff is *546 further entitled to payment of compensation under LSA-R.S. 23:1221(3) during the period of his partial disability but not beyond a maximum of four hundred (400) weeks, subject to such credits as the defendant employer is entitled to under the provisions of the cited section.

MEDICAL TRAVEL EXPENSES
The trial court pretermitted the question of reimbursement for plaintiff's expenses incurred traveling to the Chicago examination, finding defendant to have discharged such obligation by way of weekly benefits. This was error.
The duty of an employer to furnish medical expenses in addition to disability benefits is clearly stated in LSA-R.S. 23:1203:
"In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical and hospital services, and medicines, or any non-medical treatment recognized by the laws of this state as legal.
The employer likewise shall furnish to the employee the necessary cost of repair to or the replacement of any prosthetic device damaged or destroyed by accident in the course and scope and arising out of such employment, including but not limited to damage or destruction of eyeglasses, artificial limbs, hearing aids, dentures, or any such prosthetic devices whatsoever.

In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, and prosthetic devices which the employer is required to furnish under this Section."[3]
Plaintiff attended the medical examination at defendant's behest. Plaintiff is therefore entitled to recover his expenses from defendant for the 210 mile round-trip at a rate of 16¢ per mile, for a total of $33.60.

PENALTIES AND ATTORNEY'S FEES
Plaintiff predicates his demand for an award of penalties and attorney's fees on the following:
(1) His benefits were terminated on August 1, 1978, without legal cause;
(2) He was required to be examined by a physician of defendant's choice and was not, and has not been paid for medical travel expenses incurred; and,
(3) He was paid weekly compensation benefits at an improper rate.
We find it unnecessary to consider plaintiff's second and third assertions, as we find that penalties and attorney's fees are due based on the arbitrary and capricious discontinuance of compensation payments by defendant to plaintiff as of August 1, 1978.
The statutory authorization for penalties and attorney's fees is contained in LSA-R.S. 23:1201.2 which provides:
"A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between *547 the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section.
B. The notice required by the provisions of this Section may be given or made by any person claiming to be entitled to compensation, or by any one on his behalf, and shall contain the information and signature required by R.S. 23:1293 and shall be given as required by R.S. 23:1294."
Defendant urges as the basis for termination of compensation payments to plaintiff an alleged negative medical report received after plaintiff was seen by Dr. Dyer for re-evaluation of disability. Although plaintiff admitted traveling to Chicago for this examination there is nothing in the record concerning the type of examination conducted or the findings of Dr. Dyer. Dr. Dyer's report (if any was ever made) was not introduced in evidence. Dr. Dyer did not testify nor was he deposed. Under such circumstances we can give no credence whatever to expressions from defendant's witness that defendant was advised by Dr. Dyer that plaintiff's disability had terminated. On the basis of the record before us we find that at the time defendant terminated payments to plaintiff, it did so without any evidence on which to base a reasoned decision. There is nothing in the record to indicate that plaintiff's condition on August 1, 1978 was any different from his condition in November, 1976, when he failed in his attempt to return to work. In our judgment, it is the conspicuous absence of any evidence showing a serious consideration by Belden of its obligation to provide compensation to one injured in its employ, that makes its action in terminating further payments on August 1, 1978 arbitrary and capricious and an award of statutory penalties and attorney's fees appropriate.
Although we will award statutory penalties for the reasons above set forth we do not assess such penalties against the amount found by us to be due and owing plaintiff by reason of a miscomputation of his average weekly wage. Plaintiff did not at any time question the sufficiency of payments which were made until the day of trial. It is apparent from the trial court's holding that a real issue existed as to the proper computation of plaintiff's average weekly wage and the appropriate amount of weekly compensation due. Under such circumstances it cannot be said that the employer was arbitrary and capricious in failing to pay the exact amount of compensation due plaintiff from the time of his injury to August 1, 1978. See Campanella v. State, Department of Highways, 328 So.2d 798 (La.App. 1st Cir. 1976).
The final issue before us is the amount of attorney's fees to be awarded plaintiff. In determining the amount of attorney's fees to be awarded, the relevant factors include the degree of skill of the attorney and the volume of work performed by him in the prosecution and collection of the claim. See Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir. 1976). Under the circumstances of this case we consider an award to plaintiff for attorney's fees in the amount of $2500.00 to be reasonable and appropriate.
Accordingly, for the reasons above set forth the judgment of the trial court is reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Franklin D. McElhaney and against defendant, Belden Corporation, condemning defendant to pay unto plaintiff the following:
*548 (1) the sum of EIGHTEEN HUNDRED SIXTY-ONE AND 24/100 ($1,861.24) DOLLARS, representing a deficiency in compensation payments in the amount of $15.01 per week for the period extending from February 19, 1976 to August 1, 1978, with legal interest on such amount from the due date of each installment until paid, subject to a credit in favor of defendant in the sum of $406.60. (See Footnote 1)
(2) the sum of THREE HUNDRED NINETY-THREE AND 35/100 ($393.35) DOLLARS, representing workmen's compensation payments of $78.67 per week due plaintiff for the period from August 1, 1978 to September 5, 1978, with legal interest on such amount from the due date of each installment until paid.
(3) weekly workmen's compensation payments beginning September 5, 1978, calculated at sixty-six and two-thirds per centum of the difference between the wages plaintiff was earning at the time of injury ($118.00) and any lesser wages which plaintiff has actually earned in any week since September 5, 1978 during the period of his partial disability, but not beyond a maximum of 400 weeks, with legal interest on each past due installment until paid, subject to such credits as the defendant employer is entitled to under the provisions of LSA-R.S. 23:1221(3).
(4) the sum of THIRTY-THREE AND 60/100 ($33.60) DOLLARS, representing medical travel expenses, with legal interest on such amount from August 1, 1978 until paid.
(5) statutory penalties in the amount of 12% on the amounts awarded under items (2) and (4) and all past due amounts under item (3) above.
(6) attorney's fees in the amount of TWENTY-FIVE HUNDRED AND NO/100 ($2500.00) DOLLARS.
REVERSED AND RENDERED. SWIFT, J., concurs.
NOTES
[1] Appellant concedes that for a twenty week period during which he was receiving workmen's compensation payments he worked part-time earning $53.00 per week. He likewise concedes that during such period, considering his earnings from part-time employment in light of the provisions of LSA-R.S. 23:1221(3), he received an overpayment of $20.33 per week in compensation payments ($63.66$43.33) or a total overpayment of $406.60 for which total amount defendant is entitled to a credit.
[2] In the reasons for judgment appears dictum which implies that no compensation would be due under partial disability, LSA-R.S. 23:1221(3), because plaintiff at the time of trial was earning more than he was averaging when injured. Even if this is assumed to be the case as to earnings (which the evidence indicates otherwise), compensation for partial disability would still have been due for the five week period after August 1, 1978, in which plaintiff was unemployed.
[3] LSA-R.S. 23:1203 was amended by Act 400 of 1976, to provide for mileage pay to employees for travel to receive services, medicines, etc. and by Act 530 of 1977 to make the employer liable for the actual expenses incurred by the employee in traveling to obtain the services, medicines, etc. Plaintiff's examination by Dr. Dyer occurred shortly prior to August 1, 1978. Although there is no evidence in the record as to the exact travel expenses incurred plaintiff testified that he traveled by car a distance of 210 miles.