382 So.2d 206 (1980)
Edward J. ALLOR, Plaintiff-Appellant,
v.
BELDEN CORPORATION, Defendant-Appellee.
No. 7330.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
*208 Broussard, Bolton & Halcomb, Roy S. Halcomb, Jr., Alexandria, for plaintiff-appellant.
Gaharen & Wilson, Joseph Wilson, Jena, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX, SWIFT, STOKER and DOUCET, JJ.
STOKER, Judge.
This is a workmen's compensation case in which the plaintiff-appellant, Edward J. Allor, seeks a judgment for total and permanent disability together with penalties and attorney fees. There is no dispute that plaintiff injured his back in the employment of the defendant-appellee, Beldon Corporation. Plaintiff sustained a lumbosacral strain. Plaintiff contends he should be paid at the rate of $130.00 per week, the maximum rate of compensation applicable under LSA-R.S. 23:1202. His injury occurred on March 16, 1978.
The trial court awarded compensation in the amount of $99.28 per week. However, instead of awarding permanent total disability, the trial court concluded that plaintiff's disability was only temporary. The award was made for a period to end June 27, 1979. Therefore, there is an issue as to whether the judgment should have awarded compensation for permanent total disability rather than temporary total disability.
A second major issue in this case concerns the formula by which plaintiff's average weekly wage should be determined. The compensation statute provides for different formulas depending on the mode of payment of the injured worker. LSA-R.S. 23:1021(7). The method of compensation varies for workers according to whether they are paid on an hourly basis, monthly basis, annual basis, or whether they are paid on a unit, piecework, commission or other basis.
From the nature of plaintiff's work as a wire-drawer, the trial court concluded that plaintiff should be paid in the same manner as a pieceworker. Therefore, the trial court awarded compensation in the amount of $99.28 weekly on the authority of the piecework provision under the workmen's compensation statute, LSA-R.S. 23:1021(7)(d). Plaintiff contends this was error and he should be paid the maximum of $130.00 weekly as a worker paid on an hourly basis. LSA-R.S. 23:1021(7)(a). Consequently, an issue brought up by this appeal is whether or not plaintiff was employed as a pieceworker (or on a similar basis) or as an hourly paid worker.
Irrespective of how the pieceworker issue is decided, plaintiff contends he has not been paid regularly and timely the compensation due him. Plaintiff claims there were unwarranted delays in the payment of compensation for certain weeks. Further, plaintiff claims he has not been paid all medical and travel expenses due him.
Defendant-appellee contends it has overpaid plaintiff in the past and is entitled to a credit for such overpayment.
Finally, we have before us the question of whether or not defendant was arbitrary and capricious so as to justify the imposition of penalties and attorney fees. The trial court held the defendant was not arbitrary and capricious.

DURATION OF DISABILITY
We are unable to perceive any disputed issues in the medical testimony concerning plaintiff's condition. Plaintiff was seen by four physicians all of whom diagnosed plaintiff's condition as being a lumbosacral strain. Plaintiff was seen until March 23, *209 1978, by a general practitioner, Dr. Sanit Sirikul, when Dr. Sirikul referred plaintiff to an orthopaedist, Dr. Douglas L. Gamburg. Dr. Gamburg saw and treated plaintiff until July 19, 1979, when he recommended that plaintiff see another orthopaedist. Plaintiff then consulted Dr. John T. Weiss, an orthopaedist. At one point while Dr. Gamburg was the treating physician, plaintiff was seen in consultation with Dr. Gamburg by a neurosurgeon, Dr. John Patton.
We do not deem it necessary to give a detailed recitation of the medical testimony. We have concluded that the medical testimony supports the trial judge's conclusion that "It is more probable than not that plaintiff will be restored to the physical condition he was in prior to his accident by June 27, 1979, which is three months from the taking of the testimony [which was by deposition] of Dr. Weiss." For plaintiff it is strenuously argued that Dr. Weiss predicted that plaintiff would reinjure his back if he went back to his duties as a wire-drawer. However, Dr. Weiss did not testify that plaintiff had become predisposed to reinjury because of his lumbosacral strain on March 16, 1978. What Dr. Weiss said, and explained several times, was that plaintiff was simply too small in physical stature to do the kind of heavy and strenuous work involved in being a wire-drawer. The job was just too big for plaintiff to handle. The trial court was justified in limiting compensation to the period of disability indicated by Dr. Weiss, and we affirm that portion of its findings and judgment.

PLAINTIFF'S COMPENSATION RATE
In determining plaintiff's proper compensation rate, the basic issue is whether plaintiff was employed on a "unit, piecework, commission or other basis" or was an employee paid by the hour.[1]
At the time of plaintiff's accident he was paid at a rate of $3.325 per hour plus a production percentage amount. P-4 (Tr. 42 and Tr. 121) It appears that the latter amount is an incentive payment designed to encourage a greater rate of production per hour. The more a wire worker produces in a given hour the greater will be his pay. Plaintiff contends that for the four-week period immediately preceding this accident his production percentage averaged 40%.[2] Therefore, according to plaintiff, his hourly rate should be determined by adding to the base rate ($3.325) a sum equal to 40% of $3.325 ($1.33) which would result in an hourly rate of $4.655. In this connection, plaintiff contends his compensation should be calculated under the provisions of LSA-R.S. 23:1021(7)(a), which is the provision applicable to workers paid on an hourly basis. Under that provision the wage is determined by multiplying the hourly wage rate times the average actual hours worked in the four full weeks preceding the date of the injury. Plaintiff claims he averaged 47 hours weekly. Thus, his average weekly wage would exceed the maximum rate of $130.00. Therefore, plaintiff urges he should be paid the maximum rate.
Defendant contends that plaintiff was a pieceworker and was entitled to only $99.28 per week as compensation. Pieceworkers are paid a weekly compensation as prescribed by LSA-R.S. 23:1021(7)(d). The trial court held that plaintiff's compensation rate was governed by this portion of the compensation statute and awarded $99.28 per week through June 27, 1979.
Benefits payable to injured workmen are prescribed by LSA-R.S. 23:1221(1). For a worker totally disabled, whether permanently *210 or temporarily, the amount payable is 66 2/3 of wages during the period of disability. The term "wages" is defined in the compensation statute in LSA-R.S. 23:1021(7) which provides as follows:
(7) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; . . . and (d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; . . .. (Emphasis added.)
It will be noted that if plaintiff's method of computing the wage is adopted (47 hours × $4.655), his weekly wage would amount to $218.79. Sixty-six and two-thirds of that amount equals $145.85, which exceeds the maximum of $130.00 per week. Therefore, whether plaintiff's compensation rate is $99.28 per week, as found by the trial court, or $130.00, as urged by plaintiff, depends upon the resolution of the question stated at the beginning of this section of this opinion: Was plaintiff paid on a "unit, piecework, commission, or other basis" or was plaintiff an employee paid on an hourly basis?
A quite similar issue was very recently considered by this court in a case involving the same employer-defendant which is defendant here and the same incentive scheme, i. e. payment of a "production percentage amount," sometimes referred to as a "bonus". McElhaney v. Belden Corporation, 376 So.2d 539 (La.App. 3rd Cir. 1979). The only difference is that in McElhaney the employee was a trainee. As such, his bonus was 20% and was guaranteed. It did not have to be earned. The testimony in the case before us is consistent with the facts as reported in McElhaney. Once a worker goes beyond his training period, he then must earn any bonus or production percentage amount. Plaintiff Edward J. Allor was in this latter category, was no longer a trainee, and had not been a trainee for approximately 30 weeks. In McElhaney, this court held that McElhaney was not employed on a "unit, piecework, commission, or other basis" as described in LSA-R.S. 23:1021(7)(d). In McElhaney the plaintiff was receiving a guaranteed sum per hour regardless of his output. Hence, he was held to have been paid on an hourly basis, and it was held that his compensation should be computed by employing the provisions of LSA-R.S. 23:1021(7)(a).
Consequently, the issue here, although similar to the McElhaney case, is different in that plaintiff Allor's wage did vary with his production. Does this make a difference?
On behalf of plaintiff it is urged that we should take numerous factors into account. Some of these factors are:
(1) Conceding that the hourly pay was variable, it was nevertheless paid on an hourly basis and not on a piecework basis. Plaintiff and other employees similarly situated were given time cards and were required to punch in and out. Accurate time records were kept. (Tr. 190)
(2) Plaintiff was required to work a specific number of hours on an assigned schedule of days and was not at liberty to pick his own times to work.
(3) Periodic raises were given in the form of increases in the base pay. (Tr. 190-191)
(4) If plaintiff was on duty he was paid his basic pay even if he did not work. [Presumably this could occur, for example, if plaintiff's machine broke down, or if materials were temporarily out of supply.] (Tr. 189A-190)
(5) Plaintiff was paid overtime pay for any hours worked over forty hours per week. (Tr. 190)
Conceding the persuasiveness of plaintiff's arguments, we are not convinced that plaintiff should be paid on an hourly *211 basis in the manner he contends he should be. Actually the "pieceworker" provision is not solely applicable to pieceworkers. Subsection 7(d) in question applies to workers "employed on a unit, piecework, commission, or other basis." It may be seen that the Legislature provided in Subsection 7(d), not for pieceworkers alone, but rather provided for a general class of workers who were not on a fixed, unvariable, hourly wage. A commission worker works on a percentage basis but might conceivably be on a guaranteed salary plus commission. We do not know what might have been contemplated in the term, "or other basis". However, the term does indicate the Legislature did not intend for the provision to be given restrictive meaning. Rather, the Legislature intended the term to be susceptible of broad application.
Clearly the scheme of payment under which plaintiff was employed was geared to individual productivity. The wage for compensation purposes determined by the trial court was related to plaintiff's productivity. The same would be true of any employee who might be paid on a strict unit, piecework or commission basis. As we read the record, the productivity factor for each worker under the same bonus plan as plaintiff was measured by the amount of wire produced in a given time, the factor being determined by the total length of wire manufactured per period. By contrast it is clear that Subsection 7(a) contemplates a fixed, definite and unvariable rate of pay. Therefore, we conclude that the method of computing compensation in plaintiff's situation properly called for applying Subsection 7(d) as an "other basis" arrangement. We affirm the trial court in this regard. Cf. Deason v. Travelers Insurance Company, 242 So.2d 906 (La.App. 3rd Cir. 1971) [tips earned by waitress included in wage] and Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La.App. 3rd Cir. 1960) [annual bonus included in wage].

OTHER BENEFITS DUE AND DEFENDANT'S CLAIM FOR CREDIT
In addition to claiming permanent disability and penalties and attorney's fees for the non-payment of the maximum amount of compensation, plaintiff makes other claims. Also, defendant-appellee claims that it has overpaid plaintiff in compensation and claims a credit for the overpayment.
The defendant-appellee in this case is a self insurer. With respect to payments of compensation and other benefits, the defendant company, Belden Corporation, was represented at the trial by Mr. Guy Campbell, safety director at defendant's Jena plant where plaintiff worked. Gross data as to plaintiff's earnings and work record were forwarded to the company's Geneva, Illinois office. There, Mr. Bob Nelson, supervisor of insurance and workmen's compensation, calculated compensation payments due and apparently directed issuance of checks and reimbursement of expenses. The record reflects considerable confusion and inefficiency in payments of compensation and other benefits.
Defendant's Claim For Overpayment Of Compensation
The defendant alleges that it has overpaid plaintiff in compensation in the amount of $786.83. It claims a credit for this amount. See paragraph 17 of defendant's answer. The claim is based on the following facts. Defendant began payments of compensation to plaintiff at the rate of $114.45 per week. (Tr. 182) At some point thereafter, the company reduced compensation payments to $113.60 per seek. (Tr. 184) At a later point compensation was raised to $130.00 per week. (Tr. 185) Compensation at $130.00 per week was paid until September 12, 1978, when compensation was reduced to $99.28. (Tr. 185) Defendant continued thereafter to pay at the rate of $99.28 which is the rate fixed by the trial court. The trial court denied the credit claimed by defendant. We think this was correct. It is the established law of this state that amounts paid in excess of the compensation due cannot be credited as payment for future weeks. Futrell v. Hartford Accident & Indemnity Co., 276 So.2d 271 (La.1973); Thomas v. Holland, 345 *212 So.2d 1000 (La.App. 2nd Cir. 1977) and Cain v. St. Paul Fire & Marine Insurance Company, 201 So.2d 286 (La.App. 3rd Cir. 1967).
Defendant's Tardiness In Making Payments
It appears that defendant was behind with three weekly compensation checks on September 12, 1978. At that time the company made two payments, leaving one outstanding. (Tr. 124-125 and 239-240) This one overdue compensation payment was not made up until March, 1979, after a hearing on an exception of prematurity. (Tr. 240) This payment remained overdue for over 60 days, and no adequate explanation was given for the company's lapse in this respect. Under the circumstances, the company was arbitrary and capricious in this regard. Plaintiff alleged this deficiency in his petition filed on December 5, 1978, but the payment was not made until 60 days after this date. Plaintiff is entitled to 12% in penalties on the amount of $98.28 and attorney's fees.[3]
Defendant's Failure To Make Payment Of Medical And Travel Expenses Promptly
The trial court awarded defendant the sum of $30.00 for unpaid travel expense incidental to medical treatment. Mr. Campbell, the company's representative, admitted that the sum was due. (Tr. 188) The trial court denied penalties and attorney's fees for failure to make the payment on the ground that defendant was entitled to verification that travel claims were for medical purposes. However, on cross-examination, Mr. Campbell testified that there was some confusion on the company's part. His answers to counsel's questions convinces us that the reason for the nonpayment of the $30.00 item was not because of lack of verification furnished by plaintiff or failure to be given reasonable opportunity to verify the connection between the travel expense and medical purpose. (Tr. 198-199) We are of the opinion that the failure to pay was because of the company's neglect and lack of diligence in processing claims. Therefore, we find manifest error in this respect and will award penalties of this $30.00 amount together with appropriate attorney's fees. Hale v. Republic Drilling Company, 109 So.2d 268 (La.App. 1st Cir. 1959).
Additional Unpaid Travel Expenses
The trial record seems to indicate that the only dispute as to the unpaid travel expense for medical purposes was the $30.00 mentioned above. However, before this court, counsel for plaintiff points out certain stipulations and evidence which indicate that a greater sum was due. A stipulation[4] appearing on pages 123 and 124 of the transcript (see amendment on page 254) establishes that plaintiff traveled to meet appointments with the physicians or medical service units as follows:
 Dr. Sirikul 2 trips 60 miles
 Dr. Gamburg 9 trips 900 miles
 Dr. Weiss 6 trips[5] 600 miles
 Snell's Limbs & Braces 1 trip 100 miles
 ____
 TOTAL 1,660 miles
In addition to the stipulated travel, the record reflects plaintiff's hospitalization at Rapides General Hospital which is the same *213 distance from plaintiff's house as Doctors Gamburg and Weiss, 100 miles. Hence, the total mileage was 1,760 miles. Plaintiff urges he should be compensated for his travel expense at the rate of 15 cents per mile, which is reasonable. Therefore, his total mileage was $264.00. Defendant paid plaintiff a total of $181.50 in travel expenses as of April 19, 1979. (Tr. 194 and D-4 at Tr. 117) Therefore, the actual amount of unpaid expense for medical purposes at the time of trial was $82.50. This amount instead of only $30.00 should be awarded. However, we will apply the 12% penalty to the amount of $30.00 only. (It was stipulated at the February 20, 1979, hearing that the $30.00 item was not paid, and it still was not paid at the time of trial. Tr. 240. No evidence is before us as to the untimeliness of the amount over $30.00.)
Other Unpaid Medical Expenses
Apparently, as a matter of oversight, the trial court failed to award the amount unpaid at the time of trial on the bill for medical services of Dr. Weiss of $69.50. A statement showing a balance of this amount unpaid was introduced in evidence, Tr. 240, and appears in the record as exhibit P-5 at Tr. 43. Plaintiff should have judgment for this amount. We do not apply any penalty for non-payment of this item.

PENALTY ATTORNEY'S FEES
The principal objectives of plaintiff's appeal were to overturn the trial court's determinations that plaintiff was only temporarily, totally disabled and to show that his compensation rate should be $99.28 rather than the weekly maximum of $130.00 he would receive if he was an hourly paid worker. Plaintiff has been unsuccessful in both of these objectives. We have allowed 12% penalties on relatively small amounts, one compensation payment of $99.28 which was not paid for over 60 days and a $30.00 medical travel expense item overdue more than 60 days at the time of trial. Despite the modesty of the amounts upon which the penalties are to be assessed, the jurisprudence establishes that penalty attorney fees are due in such cases none the less. It is clear that they are due for arbitrary and capricious failure to pay medical expenses. Bryant v. New Orleans Public Service, Inc., 367 So.2d 100 (La.App. 4th Cir. 1979); Dupre v. Sterling Plate Glass & Paint Company, Inc., 344 So.2d 1060 (La.App. 1st Cir. 1977), writ denied 347 So.2d 246 (La.1977); Payne v. Travelers Insurance Company, 299 So.2d 913 (La.App. 3rd Cir. 1974) and Pennywell v. Crawford, 262 So.2d 830 (La.App. 2nd Cir. 1972).
Under the circumstances of this case we will award penalty attorney fees in the sum of $1,000.00.

DECREE
For the reasons assigned, the judgment appealed from is reversed insofar as it denies penalties and attorney fees, denies travel expenses in an amount less than $82.50 and fails to award medical expenses unpaid in the sum of $69.50. It is now ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Edward J. Allor, and against defendant, Belden Corporation, for penalties and as provided in LSA-R.S. 22:658 in the amount of 12% on the sum of the amounts of $99.28 and $30.00.
It is further ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against defendant in the sum of $1,000.00 as attorney's fees.
It is further ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against defendant in the sum of $82.50 representing unpaid medical travel expenses, and the sum of $69.50, representing unpaid amounts due for medical treatment, together with legal interest thereon from date of judicial demand until paid, subject to a credit for a sum paid thereon.
In all other respects, the judgment appealed is affirmed. All costs of this appeal are assessed against defendant, Belden Corporation.
REVERSED IN PART, AMENDED AND RENDERED AND AFFIRMED IN PART.
*214 SWIFT, J., concurs.
CULPEPPER, J., dissents as to penalties and attorneys fees and assigns reasons.
CULPEPPER, Judge, dissenting in part.
I dissent from that portion of the majority opinion which reverses the trial judge's denial of penalties and attorney's fees.
The grounds on which the majority awards penalties and attorney's fees are: (1) That at the time this suit was filed the defendant was behind one weekly payment of $98.20; (2) That at the time suit was filed defendant had failed to pay $30 for travel expense incurred by plaintiff to see one of the doctors.
As to the one weekly payment allegedly past due, the trial judge held in written reasons that the defendant was making timely payments from the week after the accident until the time of trial, and that defendant was not a week behind. The majority concludes the trial judge was in error on this finding of fact. I think there is a serious question as to whether defendant was a week behind at the time suit was filed. The record shows that the week after the accident on March 16, 1978, defendant commenced weekly payments in the sum of $130, which was in excess, as found by the trial judge and affirmed by the majority, of the amount of $99.28 which was actually due each week. For some reason, not clear in the record and not relevant to the issue of penalties and attorney's fees, the defendant was behind at least two payments in September of 1978. Pursuant to letters of demand by plaintiff's attorney, defendant paid two payments during September of 1978, but did not pay the third. As I understand the record, the problem was that the Belden employees were generally paid by check from the home office in another state on Friday of each week for the period of employment which had ended on Friday of the preceding week. After his accident, plaintiff was paid weekly compensation in this same manner. This complies with LSA-R.S. 23:1201 which states that "Payments of compensation under this chapter shall be paid as near as may be, at the time and places as wages were payable to the injured employee before the accident;". Thus, under the facts, as I understand them, defendant was not behind one week at the time suit was filed.
It is true, as the majority opinion states, that defendant's insurance adjuster, Mr. Campbell, testified he advised the home office to pay the one week's compensation which was in dispute. However, this testimony can be construed to mean that Campbell so advised the home office out of an abundance of precaution to avoid penalties and attorney's fees, and not because he was of the opinion that the payment was actually due.
The record also shows that after plaintiff filed this suit in December of 1978, the defendant first filed an exception of prematurity on the basis that they were not delinquent in any payments. The trial judge overruled this exception. Immediately after the judge's ruling on the exception of prematurity, the defendant paid the one week's compensation in dispute, and was current at the time of trial.
As to the $30 for travel expense to see one of the doctors, the defendant admits that through some oversight in the records in their office, this was not paid. The record shows they received many claims from plaintiff for travel expenses, and defendant insisted on verification from the physician, which was reasonable. This claim for $30 was overlooked.
The jurisprudence is clear that the penalty statute for workmen's compensation, as well as all other penalty statutes, must be strictly construed. Crawford v. Al Smith P. H. Service, Inc., 352 So.2d 669 (La.1977). Plaintiff has the burden of proving that the defendant was arbitrary or capricious in failing to pay. If the failure to pay was the result of a reasonable bookkeeping error, as in this case, penalties are not allowed.
Viewing the record as a whole, I think defendant acted in good faith and was trying to pay what it was legally obligated to pay. As held in the majority opinion, defendant *215 actually paid $786 more in weekly compensation than was due this being the result of its paying too high a rate for the first five or six months. Of course, the jurisprudence holds, as the majority states, that defendant cannot receive credit for this overpayment. However, I think it should be considered in determining whether defendant was arbitrary or capricious.
I do not think the defendant should be held arbitrary and capricious because it may have been behind one payment or because it failed, through oversight, to pay a $30 travel expense item. In this case we have the added factor that the trial judge found as a fact that defendant was not arbitrary and capricious. Under the rules of appellate review, I cannot agree that he was clearly wrong.
For the reasons assigned, I respectfully dissent in part.
NOTES
[1] It was stipulated that, if defendant-appellee is correct, the proper weekly compensation should be $98.20, but if plaintiff-appellant is correct, the amount should be the maximum rate then applicable, which was $130.00 weekly. (Tr. 256)
[2] For the four weeks which ended prior to plaintiff's accident the "bonus" or production percentage for plaintiff is shown by Exhibit D-4 to be quite variable, and, in fact varied considerably for the entire period of employment shown which runs from the week ending July 17, 1977, through the week of the accident which ended on March 19, 1978, plus two later weeks after the accident (in April and August) when plaintiff attempted to work.
[3] The trial court stated, "It is my view that the defendant was making timely payments and that they were not a week behind as argued." It is true that the one delinquent payment had been made up at the time of trial. It is also true that defendant generally was current with its payments. However, the defendant did get behind, and as to the one payment in question, the company did not pay it until after suit was filed and a hearing was held on the exception of prematurity.
[4] It was stipulated at the trial that the evidence and stipulations received at the hearing on the exception of prematurity held February 20, 1979, should be incorporated into the record and be considered as evidence on the trial on the merits. Written stipulation, P-6 at Tr. 44, admitted in evidence at Tr. 253-254 with verbal amendments of the February 20, 1979, stipulation.
[5] The stipulation was entered into at the hearing on the exception of prematurity held on February 20, 1979. At the time it was stipulated that five trips had been made to Dr. Weiss' office. Dr. Weiss testified he saw plaintiff again on March 6, 1979. Dr. Weiss' deposition, Tr. 59. See also Dr. Weiss' bill, P-5.