432 So.2d 1102 (1983)
Franklin D. SMITH, Plaintiff-Appellee,
v.
NORTHWESTERN NATIONAL INSURANCE COMPANY, et al., Defendants-Appellants.
No. 82-812.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
*1103 Stafford, Stewart & Potter, Russell L. Potter, Alexandria, for defendants-appellants.
Wilbert J. Saucier, Jr., Pineville, for plaintiff-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
GUIDRY, Judge.
The plaintiff, Franklin D. Smith, brought this suit to recover medical expense benefits allegedly due him under the workmen's compensation act.[1] Made defendants were Smith's employer, Pinkerton's, Inc., and its workmen's compensation insurer, Northwestern National Insurance Company. The trial court rendered judgment ordering defendants to (1) furnish a letter of financial responsibility authorizing hospitalization and further treatment of the plaintiff; (2) pay a penalty of 12% on a medical bill the defendants had refused to pay; (3) pay to plaintiff an attorney's fee of $750.00; and, (4) reimburse plaintiff for all travel expenses incurred in procuring treatment. The trial court refused to order plaintiff to submit to an independent medical exam as requested by the defendants.

FACTS
The plaintiff's injury occurred on September 11, 1981. Smith was employed by the defendant, Pinkerton's, Inc., as a security guard. In performance of his duties, Smith was patrolling the premises of the Best Western Motel in Alexandria, when he slipped on a set of stairs and injured his back. He was treated at the emergency room at Rapides General Hospital and referred to Dr. Daniel Kingsley for treatment. After several weeks of treatment, Dr. Kingsley advised Smith to feel free to seek a second evaluation. Smith thereafter scheduled an appointment with Dr. Rayburn *1104 Llewellyn, a New Orleans neurosurgeon. Northwestern's insurance adjuster was notified of the appointment, whereupon he advanced travel expenses to enable Smith to travel to New Orleans for the appointment.
Dr. Llewellyn examined Smith and issued a medical report on December 18, 1981. He suspected a lumbar disc, and also found severe scoliosis and a spur at L4-L5 and L5-S1. The report stated that the plaintiff was disabled and unable to return to work. Dr. Llewellyn recommended hospitalization for an EMG, CAT scan, and possible surgery.
The plaintiff paid Dr. Llewellyn's bill of $135.00. Plaintiff's attorney thereafter forwarded the receipt for the bill to Northwestern's adjuster for reimbursement. He also requested a letter of financial responsibility authorizing hospitalization and further treatment by Dr. Llewellyn. Despite repeated requests from plaintiff's attorney, Northwestern's adjuster refused to comply with these demands and this suit resulted.

LETTER OF FINANCIAL RESPONSIBILITY
LSA-R.S. 23:1203 requires that the employer "furnish all necessary medical, surgical and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal." This duty includes the obligation to guarantee payment for necessary future medical treatment. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981).
The defendants contend that the trial court erred in ordering them to furnish a letter of financial responsibility for the cost of hospitalization and further treatment. They assert that they were justified in withholding the letter because they were not furnished a copy of Dr. Llewellyn's report recommending such hospitalization and treatment.
The record shows that the plaintiff, through his attorney, requested the letter of credit by letters dated January 12, 1982 and February 12, 1982. However, it appears that the report of Dr. Llewellyn was not furnished to the adjuster at the time these demands were made. Under these circumstances, the defendant may have been justified in withholding the letter of credit until they were provided with sufficient proof, in the form of a medical report, of the necessity for hospitalization. However, a third demand letter, dated April 29, 1982, was accompanied by the report of Dr. Llewellyn. This letter and the accompanying report were received by the adjuster on May 4, 1982. After receipt of the report, with its clear recommendation of hospitalization, Northwestern was obligated to furnish the letter of financial responsibility to enable the plaintiff to receive the required treatment. We find no error in the trial court's judgment ordering the defendants to furnish the letter of financial responsibility.

PENALTY AND ATTORNEY'S FEES
Penalties and attorney's fees are due for arbitrary and capricious failure to pay medical expenses. Allor v. Belden Corporation, 382 So.2d 206 (La.App. 3rd Cir.1980). The trial judge assessed a penalty of 12% on the sum of $135.00, the amount of the bill rendered by Dr. Llewellyn, as well as an attorney's fee of $750.00, as a result of the defendants' arbitrary and capricious failure to pay the bill. The plaintiff had paid the bill in cash, and thereafter sought reimbursement from the defendants. The first demand for reimbursement, made through plaintiff's attorney, was made by the letter of January 12, 1982. A copy of Dr. Llewellyn's bill, marked paid, was attached to this letter. Payment was again demanded by the letter of April 29, 1982, which was accompanied by Dr. Llewellyn's report. This suit seeking payment of the bill was filed on May 18, 1982. A check was issued by Northwestern's adjuster on June 30, 1982, reimbursing plaintiff for payment of the bill.
The defendants contend that they were under no obligation to pay this medical expense until they received the medical report of Dr. Llewellyn. They cite Carter *1105 v. American Mutual Liability Insurance Company, 386 So.2d 1072 (La.App. 3rd Cir. 1980), wherein this court held that a defendant liability insurer was not arbitrary and capricious in requiring medical reports to substantiate bills before making payment. The defendants claim that the plaintiff refused to comply with their requests for Dr. Llewellyn's report, and that when they finally received the report on May 4, 1982, payment was made within 60 days as required by the statute.
Despite the fact that the defendants were not promptly supplied with a copy of Dr. Llewellyn's report, we find that they were arbitrary and capricious in failing to reimburse the plaintiff following their receipt of the letter of January 22, 1982, to which a copy of the bill, marked paid, was attached. It is undisputed that the defendant's adjuster issued a check to plaintiff in advance to cover the cost of travelling to New Orleans for the appointment. The defendants now contend that, in spite of this advance of travel expenses, they never approved of the plaintiff's appointment with Dr. Llewellyn. In addition, the plaintiff testified that when he received the travel expense check from the defendant's adjuster, the adjuster assured him that he would be reimbursed for the medical bill when the company received a copy of the bill.
In light of these circumstances, we find no manifest error in the trial judge's conclusion that the defendants were arbitrary and capricious in failing to pay this medical bill. We will not disturb the award of the penalty and attorney's fee.

INDEPENDENT MEDICAL EXAM
The defendants assert that the trial judge erred in refusing to order plaintiff to submit to an independent medical exam arranged by the defendants. They argue that all benefits owed to plaintiff should be suspended until he submits to the examination.
LSA-R.S. 23:1124 provides:
"If the employee refuses to submit himself to a medical examination as provided in this Sub-part or in anywise obstructs the same, his right to compensation and to take or prosecute any further proceedings under this Chapter shall be suspended until the examination takes place. When a right to compensation is suspended no compensation shall be payable in respect to the period of suspension."
Before benefits can be suspended under this statute, there must be a judicial determination that the examination requested by the employer is reasonable. Green v. Liberty Mutual Insurance Company, 184 So.2d 801 (La.App. 3rd Cir.1966).
The defendants arranged an appointment for the plaintiff to see Dr. Richard Levy on June 7, 1982. The plaintiff failed to keep this appointment. However, no judicial determination has ever been made regarding the reasonableness of this examination. Therefore, the trial court was correct in refusing to suspend the plaintiff's benefits. Furthermore, any failure of the defendants to pay benefits owed to the plaintiff cannot be justified by the refusal of the plaintiff to submit to this examination. Green v. Liberty Mutual Insurance Company, supra.
The trial court refused to order the plaintiff to submit to an examination by Dr. Levy. The court did not rule that the defendants may never have the plaintiff examined by a doctor of their choice. He simply determined that the plaintiff should receive hospitalization and the treatment by Dr. Llewellyn which has been recommended since December of 1981. We agree with the trial court that any order directing the plaintiff to submit to another examination should not be granted until the results of Dr. Llewellyn's long-delayed treatment are known.
The plaintiff-appellee seeks an increase in the amount of attorney's fees awarded by the trial court. LSA-C.C.P. Art. 2133 requires an appellee who seeks to modify the judgment of the trial court to answer the appeal no later than fifteen days after the return day or the lodging of the record, whichever is later. The return date of the present appeal is December 19, 1982. The record was lodged on December *1106 20, 1982. Plaintiff-appellee's brief, styled "Answer to Appeal on Behalf of Franklin D. Smith, Plaintiff-Appellee", was not filed until February 3, 1983. We need not consider whether plaintiff's brief constitutes an adequate answer to the appeal, since it was not filed within the delay provided by LSA-C.C.P. Art. 2133. Because no answer was timely filed, the award of attorney's fees will not be modified.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to defendants-appellants.
AFFIRMED.
NOTES
[1] The plaintiff's entitlement to disability benefits is not at issue. These benefits were paid to plaintiff from the time of his injury through the date this matter was tried.