423 So.2d 765 (1982)
Irma URBINA
v.
ALOIS J. BINDER BAKERY, INC. and Liberty Mutual Insurance Company.
No. 13309.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
*766 Carlos E. Zeledon, Antonio L. Carbonell, New Orleans, for plaintiff-appellant.
Borello & Huber, Marsha B. Healy, Metairie, for defendants-appellees.
Before GARRISON, AUGUSTINE and CIACCIO, JJ.
CIACCIO, Judge.
Plaintiff appeals from the dismissal of her suit for workmen's compensation following an on the job accident which occurred while she was employed by defendant, Alois J. Binder Bakery, Inc. We reverse the dismissal and render judgment.
Mrs. Urbina is a forty-four year old Spanish-speaking woman, with a sixth grade education that she received in her native Honduras. She has been in this country for twenty years. Plaintiff is an unskilled worker who has performed various jobs for a variety of employers over the last ten years prior to the accident involved in this case.
On July 14, 1976, Mrs. Urbina slipped and fell while working in defendant's bakery. Plaintiff's left arm hit a piece of machinery and she landed in a seated position on a carpeted portion of a concrete floor.
During the week following the fall Mrs. Urbina's arm was bruised and she complained to a co-worker that her arm hurt. She also complained of lower back pain. She continued her regular work schedule until August 21, 1976, however, she did not return to work thereafter.
On August 23, 1976, Mrs. Urbina saw Dr. Barnes a gynecologist, who was her regular physician. She had last seen him on June 30th, fourteen days before her fall. Normally she visited Dr. Barnes at six-month intervals for a regular check up and received treatment from him for hypothyroidism, uterine retroversion, hormonal imbalance, obesity and peripheral neuritis. On this visit she complained of pain in her left arm and right leg. Dr. Barnes began treating the plaintiff for acute myositis, which treatment consisted of therapy, medications and heat. He examined her again on September 1st and observed no progress. He, therefore, referred her to Dr. Joseph Licciardi, an orthopedic surgeon.
*767 Dr. Licciardi saw Mrs. Urbina on September 7, 1976 at which time she complained of low back pain. X-rays showed some physical evidence of nerve root irritation on the right side, which the doctor called sciatica. Dr. Licciardi saw Mrs. Urbina again on November 12, 1976, at which time his examination revealed some pressure on the nerve in the right leg for which he recommended she wear a corset. The doctor's impression at this time was that Mrs. Urbina may have a degenerative disc disease.
Dr. Licciardi saw Mrs. Urbina again on December 1st, at which time she had not yet gotten the corset. He observed involuntary muscle spasm in her back and he again recommended a corset. He saw her again on December 15, 1976. She had been wearing a corset and she was better. The doctor recommended that she continue wearing the corset and return in two weeks. She did not do so, and the next occasion that Dr. Licciardi had to see her was on April 2, 1978, in the hospital, while she was under the care of Dr. McCurley. On this occasion Dr. Licciardi's examination revealed no muscle spasm; the plaintiff's left shoulder and hips were normal; and there were negative results on the neurological test, x-rays and myelogram. With no objective findings, it was the doctor's impression that plaintiff had chronic low back pain of the right sciatica and painful left shoulder. He suggested a corset, bed rest, and heat. He did not see Mrs. Urbina again.
Mrs. Urbina first saw Dr. McCurley, an internist, on December 22, 1976, at which time she gave a history of the fall and related an experience of sudden pain in the lower back, and pain radiating down the posterior aspect of the right leg to her right foot and toes. On this first examination Dr. McCurley found localized tenderness of the left shoulder and localized tenderness of the 4th and 5th lumbar interspaces. He found a reduction of range of motion in the left shoulder and the left lumbar spine. The neurological examination revealed no impairment of tendon reflexes and no loss of sensation. Dr. McCurley concluded that Mrs. Urbina had a herniated disc in the lower back and tendonitis in the left shoulder.
Mrs. Urbina continued to complain of back pain so Dr. McCurley hospitalized her from July 31, 1977 to August 20, 1977. She underwent an extensive workup, all tests being essentially normal, except that x-rays of the lumbar and cervical spine showed osteoarthritis. Dr. McCurley's professional opinion was that Mrs. Urbina had an osteoarthritic condition on July 14, 1976, at the time of her fall, and that the fall converted the asymptomatic osteoarthritis condition into a symptomatic one.
While hospitalized, Mrs. Urbina was seen also by Dr. Kline, a neurosurgeon. Dr. Kline found tenderness in the back of the neck and in the lumbrosacral region. He decided that Mrs. Urbina may have a herniated disc at L4, L5, and also cervical arthritis. He recommended conservative treatment.
Mrs. Urbina was discharged from the hospital on August 20, 1977, to be treated as an out patient by Drs. Kline and McCurley. The next time Dr. Kline saw her, however, was on March 26, 1978, when she was again hospitalized by Dr. McCurley. She was hospitalized from March 24, 1978, to April 4, 1978. During this stay she was seen by Dr. McCurley and Dr. Kline, and also by Dr. Russo, an orthopedist, Dr. Hull, a rheumatologist, and Dr. Cary, a neurosurgeon whom Dr. Kline had recommended to be called in on consultation. Dr. Russo and Dr. Hull both felt that Mrs. Urbina had osteoarthritis. A myleogram failed to show a herniated disc in the lumbar area.
Following discharge from the hospital, plaintiff continued to see Dr. McCurley on an out-patient basis. She saw him in June, July, August, October, November and December, 1978, and in January and March of 1979. During these times she continued to complain of pain in the lumbar spine. As a result Dr. McCurley considered her to be 50% partially disabled and 50% permanently disabled.
Mrs. Urbina was also examined by Dr. Stokes on March 2, 1977. To him she complained *768 of upper left extremity pain and lower back pain. Dr. Stokes' examination revealed no objective clinical findings and no mechanical basis for the continued pain. His opinion was that on March 2, 1977, Mrs. Urbina was able to work in an unrestricted manner. His notes indicated that x-rays revealed no evidence of arthritic condition, either of the spine or the left upper extremity; there were no degenerative changes shown by the x-rays; there were no objective or neurological problems evident suggestive of difficulty with a disc; EMG and nerve conduction studies performed at the hospital were found to be within normal limits.
Dr. Stokes was of the opinion that if Mrs. Urbina had a pre-existing osteoarthritic condition which had been aggravated by a fall in July of 1976, and if she was still symptomatic from that condition, then she would have had a restricted range of motion and would not have been able to touch her toes or execute the various maneuvers he put her through on March 2, 1977. He was convinced that there was no arthritis when he examined Mrs. Urbina on March 2, 1977.
This case was tried before a commissioner. In his report to the trial judge the commissioner set out his findings, conclusions and recommended judgment. The commissioner found that plaintiff did have a work related accident. He then weighed and evaluated the expert medical testimony and concluded that plaintiff's disability was not caused by the work related accident reasoning "that plaintiff failed to prove by a preponderance of the evidence that her disability resulted from a work related accident." The commissioner, consequently, recommended that plaintiff's suit be dismissed. The trial judge adopted the commissioner's findings and conclusions and rendered the recommended judgment.
Appellant argues that the trial court erred in failing to apply a legal presumption that plaintiff's disability resulted from a work related accident, and that the burden of proof shifted to defendants to prove that the employee's disability was caused by something other than the accident. Appellee answered the appeal founding its argument on the principle that the trier of fact has much discretion in weighing and evaluating the testimony and the exercise of that discretion, based upon findings of fact, must not be disturbed absent abuse or manifest error. As to the presumption referred to by appellant: "Appellees argue that a presumption is a legal extra poundage in the weighing of a totality of evidence."
As noted above, Mrs. Urbina suffered from a number of medical problems for which she had been receiving treatment prior to her fall in July, 1976. She had never complained to her regular physician, Dr. Barnes, of any low back pain. Nor had she experienced any difficulties which had caused her to miss work. At trial the parties stipulated that prior to July 14, 1976, her work attendance record had been perfect. As far as concerns her working activity, Mrs. Urbina had exhibited a healthy condition.
Mrs. Urbina's work related activities represented relatively light duty jobs. She would pack and tray bread and doughnuts. Then she would carry the trays, weighing approximately ten pounds, and place them in the racks for the delivery truck drivers. Placing the trays in the racks involved some lifting, bending and stooping.
After the fall on July 14, 1976 plaintiff began to experience pain which she claims caused her to discontinue working. Mrs. Urbina complains that her condition progressively worsened to the point that by the time of trial she could no longer lift, bend, stoop or have prolonged sitting periods without experiencing pain.
In the recent case of Guillory v. United States Fidelity and Guaranty Insurance Company, 420 So.2d 119 (La.1982), the Louisiana Supreme Court set out "the legal principles related to the Louisiana scheme of workers' compensation," as follows:
"1) Clearly a worker's pre-existing condition does not bar his recovery under the Louisiana Workers' Compensation statute. Guidry v. Serigny, 378 So.2d 938 (La.1979); Roussel v. Colonial Sugars *769 Company, 318 So.2d 37 (La.1975) ... Allor v. Belden Corp., 393 So.2d 1233 (La. 1981).
2) The accident need not either cause or aggravate the disease which is the cause of the disability, nor adversely change a particular organ or organs of the body....
3) Where there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. Allor, supra. The criterion for causal connection between the accident and the disability is: `has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?' Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 at 827 (1969).
4) The presumption referred to in number three above is rebuttable. Its effect is to shift the burden of proof to the defendant. The defendant bears the burden of coming forward with enough evidence to rebut the presumption. Allor, supra; Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927 (La. 1978).
5) The ultimate determination concerning disability under the worker's compensation statute is by the courts, not the medical experts. The courts apply legislative definations to the medical science in order to achieve an equitable and just result. Bertrand, supra [221 So.2d] at 828. `Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the Court, based on all the credible evidence.' Haughton, supra at 928."
For additional discussion of these principles, see also: Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.,1981), and on rehearing, August 4,1981; Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980); Clofer v. Pratt Farnsworth, Inc., 407 So.2d 1295 (La.App.4th Cir.,1982).
Considering the facts of this case as found by the Commissioner and the legal principles enunciated above, we find the following.
1) Before July 14, 1976, Mrs. Urbina was not disabled and had a perfect work attendance record.
2) She suffered a work-related accident, the fall on July 14, 1976.
3) Following the accident she experienced pain and discomfort and eventually she was disabled from performing her regular work duties by virtue of the pain she experienced when lifting, bending, stooping or sitting for prolonged periods.
4) Her disability is presumed to have been caused by the accident.
5) Defendant did not rebut the presumption. Medical testimony presented the possibility that something other than the accident could have changed an asymptomatic osteoarthritic condition into a symptomatic condition. This possibility, however, does not carry the burden which shifted to the defendant to prove that plaintiff's disability was caused by something other than the accident.
We therefore find that plaintiff's disability was caused, at least in part, by the fall she suffered on July 14, 1976.
We now must determine the extent of disability and the amount of the benefits to be awarded.
From a careful review and examination of the entire record we find plaintiff partially disabled. Under R.S.23:1221(3) she is entitled to receive sixty-six and twothirds per centum of the difference between the wages she was earning at the time of the accident and any lesser wages earned by her thereafter for a period not to exceed four hundred weeks. The record shows that plaintiff's hourly wage was $3.00 at the time of the accident and that she is not currently employed. The average weekly wage would amount to $120.00, computed on a forty hour work week. See: La.R.S. 23:1021(7). Plaintiff is, therefore, entitled *770 to weekly compensation benefits amounting to $80.00 for four hundred weeks.
Under La.R.S.23:1203 the plaintiff's employer is liable for all necessary medical, surgical and hospital services, and medicines. Evidence produced at trial showed plaintiff's past medical expenses, none of which were traversed as being unnecessary, totaled six thousand one hundred seventythree and 73/100 ($6,173.73) dollars. Plaintiff, therefore, is entitled to reimbursement for medical expenses totalling $6,173.73.
We find that the penalties and attorney fees provided in La.R.S.23:1201.2 and as prayed for by plaintiff are not warranted in this case. The evidence adduced at trial does not allow for a clear determination of when defendant became aware that plaintiff had suffered an accident. Further, the circumstances of this case exhibit a genuine dispute between the parties concerning the compensability of plaintiff's claim. Defendants' failure to commence paying benefits within sixty days under these circumstances was not arbitrary, capricious or without probable cause. See: Freechou v. Hooley, 413 So.2d 238 (La. App.,4th Cir.1982).
For the reasons assigned the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff, Mrs. Irma Urbina, and against defendants, Alois J. Binder Bakery, Inc., and its insurer, Liberty Mutual Insurance Company, for weekly compensation benefits for partial disability, at the rate of eighty ($80.00) dollars for four hundred weeks, minus any lesser wages which Mrs. Urbina actually earns in any week during the four hundred weeks in any gainful occupation for wages, and for past medical expenses totalling six thousand one hundred seventy-three and 73/100 ($6,173.73) dollars reserving to plaintiff her right to claim future medical expenses as they become due. Costs are assessed against the defendants.
REVERSED AND RENDERED.