426 So.2d 1370 (1983)
Eloise P. ANTILLEY, Plaintiff-Appellee,
v.
SENTRY INSURANCE COMPANY, Defendant-Appellant.
No. 82-461.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*1372 Provosty, Sadler & deLaunay, Albin A. Provosty, Alexandria, for defendant-appellant.
Brittain, Williams & Wright, Jack O. Brittain, Natchitoches, for plaintiff-appellee.
Before GUIDRY, CUTRER and LABORDE, JJ.
LABORDE, Judge.
Eloise P. Antilley, widow of Luther P. Antilley, brought this suit to recover workmen's compensation death benefits. The trial court found that Luther sustained a heart attack as a result of an automobile accident on May 5, 1980; that he was within the scope of his employment at the time of the accident and heart attack; that the heart attack and his death on May 10, 1980, were directly caused and connected to the accident of May 5, 1980; and awarded Eloise death benefits and expenses, including the hospital bills; the amount paid to the funeral home and monument company, the physicians fee; travel expenses; twelve (12%) percent penalties on the unpaid expenses, plus attorney's fees in the amount of SEVEN THOUSAND FIVE HUNDRED AND NO/100($7,500.00)DOLLARS. The defendant, Sentry Insurance Company, appeals. Eloise, appellee, answers the appeal seeking an additional sum for attorney's fees for the preparation and representation in this appeal of not less than SEVEN THOUSAND FIVE HUNDRED AND NO/100($7,500.00)DOLLARS.
From our review of the record, we conclude that the trial court abused its discretion in awarding $7,500.00 in attorney's fees. Also, the trial court erred in its calculation of weekly death benefits. Therefore, the judgment is amended to award only $5,000.00 in attorney's fees and to increase the weekly death benefits to $95.13 and in all other respects the judgment is affirmed. We deny appellee's request for additional attorney's fees for services rendered on appeal since we feel that the fees awarded are adequate to cover services rendered on the trial level and on appeal.
The issues on appeal are:
I. Whether the evidence reasonably supports the trial court's finding of fact *1373 that Luther Antilley sustained a heart attack on May 5, 1980, and that his death on May 10, 1980, was caused by the heart attack on May 5, 1980.
II. Whether the trial court erred as a matter of law in according more weight to the testimony of Dr. Grodman on the issue of causation.
III. Whether the trial court erred as a matter of fact and law in finding:
(A) Sentry Insurance Company subject to penalties and attorney's fees for an arbitrary and capricious failure to pay benefits;
(B) Computation of the award of benefits.
IV. Whether appellee, Eloise Antilley, is entitled to additional attorney's fees.

FACTS
On May 5, 1980, Luther was involved in a collision while riding as a passenger in a truck owned by his employer, Cane River Supply Company. Luther told his employers he was not hurt physically, but a little shook up. The accident happened on a highway several miles from the Cane River Supply Company's main business building and after the accident, Luther continued to do some of his routine work. Later that evening, he became extremely sore and complained of pain in his right chest and shoulder. He was seen by his family doctor, Charles E. Cook, M.D., a general practitioner of Natchitoches, who hospitalized Luther for three days. Luther was admitted for pain and discomfort associated with anxiety. Luther continued complaining to members of his family and co-workers of pain and discomfort in the right chest and shoulder area.
On May 10, 1980, while driving from Natchitoches to his home, several miles east of Natchitoches, Luther suffered a heart attack. His vehicle left the blacktop road on which it was being driven, went into a ditch and caught on fire. Two individuals who happened along at this time saw the vehicle in the ditch burning, and removed Luther from the vehicle and transported him to the Natchitoches Parish Hospital where he was pronounced dead on arrival. Although there were smudge marks on Luther's head, it is clear that the fire did not cause or contribute to his death.
Following the death, Dr. Charles E. Cook, who happens to be the Coroner for Natchitoches Parish did an autopsy. Because Dr. Cook was not a pathologist, he removed most of the vital organs from Luther's body and sent them to Dr. P.G. Grodman, a pathologist in Monroe, Louisiana, who has worked closely with the Natchitoches Parish Coroner for several years. Upon viewing the organs and certain slides of the organ tissue, Dr. Grodman called Dr. Cook on the telephone and stated that the pathological findings indicated that Luther's heart showed damage which appeared to be five days old when he died on May 10, and that Luther's continued complaints of pain and discomfort in his right shoulder and chest area indicated that Luther was suffering with heart symptoms from May 5, to May 10, 1980. Dr. Grodman stated that Luther had died of a second heart attack on May 10, which was directly attributable to the accident and heart attack on May 5th.

CAUSATION
The first issue we address is the correctness of the trial court's determination that Luther's heart attack that resulted in death was caused in part by the accident on May 5, 1980. On this issue, the court was presented with two conflicting medical opinions.
Dr. Cook, family physician and coroner, and Dr. Grodman, pathologist, concluded Luther sustained a right coronary thrombosis as a result of the accident of May 5, 1980, and that while it was not fatal, both doctors opined that the right coronary thrombosis resulted in an increase in the workload on the remaining arteries and contributed to the acute occlusion of the left anterior descending coronary, which did cause Luther's death.
The defendant introduced the depositions of Dr. McCormick and Dr. Godley. Dr. McCormick, a specialist in Forensic Pathology and Coroner of Bossier Parish, stated that he found no evidence of the organizing process, which he believed should have been *1374 very evident in the case of a thrombosis at least five (5) days old. Dr. McCormick suggested that what Dr. Grodman actually saw on her gross examination was arteriosclerotic plague. While he agreed that Luther probably suffered a left-sided heart failure on May 10, 1980, he could not say the heart failure was caused by an occlusion of the arteries. Dr. Godley, a specialist in internal medicine and cardiology, opined that there is usually no connection between an occlusion of the right artery and an occlusion of the left artery.
To resolve this conflict in medical testimony, it is helpful to review recent jurisprudence concerning the relation between job related accidents and resultant disabilities. At the outset we observe that a worker's pre-existing condition does not bar his recovery under our workmen's compensation statute. Guidry v. Serigny, 378 So.2d 938 (La.1979); Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119, (La.1982). An employer takes the employee as he finds him. An abnormally susceptible worker is entitled to the same protection as a healthy worker. Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Guillory v. U.S. Fidelity & Guar. Ins. Co., supra.
The plaintiff-employee in a workmen's compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421, at 422 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Beldon Corp, supra, at 1236; Lucas v. Insurance Company of North America 342 So.2d 591, at 595 (La.1977). Furthermore, medical testimony must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042, at 1044-1045 (La.1982).
A plaintiff's-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Allor v. Belden Corp., supra at 1236; Lindsey v. H.A. Lott, Inc., 387 So.2d 1091, at 1092 (La.1980); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, at 1146, 221 So.2d 816, at 827-28 (La.1968).
The record reveals that Luther had an enlarged heart, arterio sclerosis, and high blood pressure before the automobile accident which occurred on May 5, 1980, but he was working everyday, had experienced no chest pains, weakness or dizziness and had not seen a doctor for any of these problems for about a year before the accident. The only medication that he was taking was medicine to control his blood pressure. Subsequent to the automobile accident, he experienced pains in his right shoulder and chest, weakness and dizziness, and was placed in the hospital due to the above symptoms. The medical evidence of the treating physician, who had been his treating physician for ten years, and who is also the Parish coroner, and the testimony of the pathologist that assisted the coroner to perform the autopsy on Luther following his death, both established a causal connection between the automobile accident of May 5, 1980, and the death of May 10, 1980. They stated that the accident of May 5, 1980, caused a right-sided heart attack on May 5, 1980. The right-sided heart attack on May 5, 1980, caused the left arteries carrying the blood to the heart muscle to have to work harder, increasing the chance of a blood clot in those left arteries, and caused the heart to have to work harder because the right-sided heart attack created a problem in the heart function. These things precipitated and/or contributed to the left-sided heart attack on May 10, 1980, that killed Luther.
*1375 The trial court found that Luther sustained a heart attack as a result of the accident which occurred on May 5, 1980, and that the heart attack and death of Luther on May 10, 1980, was caused and connected to the accident of May 5, 1980. In light of the factual circumstances of his death and the liberality of the more recent cases in finding causal links between employment-related accidents and resultant disabilities, we find no manifest error in the trial court's determination. The trial court's conclusion was supported by ample medical and other testimony, and was not clearly wrong.
Sentry argues that the trial court erred in according more weight to the testimony of Dr. Grodman on the issue of causation. The basis of this argument is that the testimony of a specialist, i.e. Dr. Godley, as to matters within his field is entitled to greater weight than the testimony of a non-specialist as to the same matters. Dr. Grodman, the attending pathologist, examined the organs and tissues just a few days after Luther's demise. In Schouest v. J. Ray McDermott & Co., Inc., supra, at 1044, the court stated that the diagnosis and the opinion of the treating physician are entitled to more weight than that of those doctors examining the plaintiff for consultation for litigation purposes only. Dr. Godley and Dr. McCormick were not contacted until a year after the death of Luther. Dr. Godley examined no organs or slides. His conclusions were based on written records. It is nonetheless noteworthy that the doctors called by Sentry did not categorically rule out that the accident of May 5, 1980 caused or contributed to the fatal heart attack on May 10, 1980. Furthermore, medical testimony "must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events in order to judicially determine probability. Schouest v. J. Ray McDermott & Co., Inc., supra. Therefore, we conclude that the trial court did not abuse its discretion in giving more weight to Dr. Grodman's testimony.

PENALTIES AND ATTORNEY FEES
The issue of whether the refusal to pay compensation benefits was arbitrary and capricious is a factual determination which must be determined upon the merits of each case. Sentry contends that there was a bona fide dispute as to whether the heart attack was causally related to the plaintiff's employment. A review of the record reveals the following: At all times pertinent herein, Sentry Insurance Company provided a policy of Workmen's Compensation benefits to Cane River Supply Company; upon being notified of Luther's death, Sentry began investigating the death; on July 10, 1980, two months post death, Dr. Grodman gave a 28-page statement to Mr. Cole, an agent of Sentry, in which the doctor specifically stated to Sentry that Luther's accident of May 5 caused the heart attack on the same date and that the May 5 heart attack caused the heart attack of May 10, clearly outlining a causal connection between the death of May 10, with the accident of May 5; from the time of Luther's death, Sentry had paid no workmen's compensation benefits of any kind; they relied instead on the testimony of Dr. Godley and Dr. McCormick, who were not contacted until after a year had expired from the death of Luther.
The purpose of the penalty provision of the workmen's compensation statute is to discourage an attitude of indifference to the injured employee's condition. Poindexter v. South Coast Corporation, 204 So.2d 615 (La.App. 4th Cir.1967). Therefore, the record fully supports the trial court's determination that Sentry was arbitrary in refusing to pay the claim. We affirm the casting of the statutory penalties and attorney's fees against Sentry.

ARE THE ATTORNEY'S FEES EXCESSIVE?
Sentry further argues that the trial court erred in awarding attorney's fees in the amount of $7,500.00 and suggests a reduction therein. In determining the amount to be awarded, the relevant factors include the degree of skill of the attorney *1376 and the volume of work performed by him in prosecution of the claim. In similar cases requiring approximately the same degree of skill and volume of work by the prosecuting attorney, the courts have awarded $5,000.00 in attorney's fees.[1]Moreau v. Houston General Ins. Co., 386 So.2d 151 (La.App. 3rd Cir.1980). Therefore, we reduce the award of attorney's fees to $5,000.00.
Eloise answered the appeal and asked for an additional $7,500.00 in attorney's fees to cover the cost of appeal. We deny an award of additional attorney's fees. We feel that the award of $5,000.00 is ample renumeration for the legal services rendered at trial and on this appeal. Moreau v. Houston General Ins. Co., supra.

DEATH BENEFITS
Sentry specifies error in the trial court's determination of the amount of compensation to which Eloise is entitled. The trial court's calculations are as follows:

"174 divided by 4 = 43.5 hours per week.
Regular - 40 hours × $5.40 = $216.00
Overtime - 3.5 hours × $8.10 = 28.35
 _______
 TOTAL $244.35 $244.35
Company furnished work clothes.
Value - $5.50 per week × 4.2 $ 23.10
Less amount paid by Antilley 7.50
 _______
 $ 15.60 $ 15.60
Company paid insurance.
Amount paid by company per
month $138.44
Less amount paid by Antilley 17.85
 _______
 $120.59 divided by
 4.2
 $ 28.71
Total weekly benefits to Luther Antilley $288.86
Widow entitled to 32.5% - R.S. 23:1232 $ 93.81
Mrs. Antilley is entitled to $93.81 in weekly
benefits."

Sentry submits that the amount of $93.81 is clearly incorrect. They contend that the amount payable weekly to Eloise should be $80.73 based on the parties stipulations that Luther's wages for the four (4) weeks prior to May 5, 1980, were as follows:
a) 168 hours at $5.40 per hourregular time;
b) 8 hours at $8.10 per hourovertime.
They further contend there should be no addition to the regular and overtime wages earned by Luther of the amount designated as "work clothes" and "insurance".
In reviewing the record, we conclude that Sentry is correct in that the parties did stipulate to the number of hours that Luther worked 4 weeks prior to his death. After a review of the record and jurisprudence we conclude the trial court correctly included as part of the weekly wage basis, for the purpose of computing the weekly workmen's compensation benefits, the insurance and the clothing regularly furnished to the employee as part of the consideration for his services in addition to his wages. Morgan v. Equitable General Ins. Co., 383 So.2d 1067 (La.App. 3rd Cir. 1980); Ardoin v. Southern Farm Bureau Casualty Ins. Co., 134 So.2d 323 (La.App. 3rd Cir. 1961). Thus, Eloise is entitled to the payment of compensation calculated as follows:

176 divided by 4 = 44.0 hours per week.
Regular - 40 hours × $5.40 = $216.00
Overtime - 4.0 hours × $8.10 = 32.40
 _______
 TOTAL $248.40 $248.40
Company furnished work clothes.
Value - $5.50 per week × 4.2 $ 23.10
Less amount paid by Antilley 7.50
 _______
 $ 15.60 $ 15.60
Company paid insurance.
Amount paid by company per
month $138.44
Less amount paid by Antilley 17.85
 _______
 $120.59 divided by
 4.2
 $ 28.71
Total weekly benefits to Luther Antilley $292.71
Widow entitled to 32.5% - R.S. 23:1232 $ 95.13

*1377 Eloise Antilley is entitled to $95.13 in weekly benefits.
Sentry further contends that there was no evidence presented to support the award of $.16 per mile for two trips to the doctor. We hold that the trial court did not abuse its discretion in making this award.
Appellee, Eloise Antilley, answered the appeal and requested additional attorney's fees. We deny the request since we feel that the fees awarded are adequate to cover services rendered on the trial level and on appeal.
For the above and foregoing reasons, the judgment of the trial court is amended as follows: The award of $7,500.00 in attorney's fees is decreased to $5,000.00; and the award of $93.81 in weekly death benefits is increased to $95.13. The judgment is affirmed as amended. Costs of the appeal are assessed against Sentry Insurance Company, defendant-appellant.
AMENDED, AFFIRMED AS AMENDED.
NOTES
[1] At oral argument, Sentry conceded that Antilley's attorney was highly skilled and possessed vast trial experience in the trial of workmen compensation cases. We agree. Although this case involves complicated medical-legal issues, our review of the record reveals that only three (3) out-of-town depositions were taken in this case and the trial lasted less than one (1) day. See Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1980).