GUIDRY, Judge.
Plaintiff, Thomas J. States, appeals a judgment dismissing his petition for worker’s compensation benefits. We affirm.
Two issues are presented for determinátion on appeal: (1) Did an “accident” occur on September 18, 1985? (2) If so, did the trial judge err in failing to find a reasonable possibility of causal connexity between the accident and plaintiff’s alleged disabling condition sufficient to establish a presumption of causation?
The trial judge succinctly set forth the salient facts in his reasons for judgment as follows:
“Plaintiff was employed as an oilfield roughneck for seven (7) to eight (8) years, the last two (2) of which were with defendant. During the course of his employment plaintiff was engaged in regular drilling activities including the mixing of chemicals mainly used in the confection of drilling mud. Plaintiff claims that on or about September 18, 1985 he inhaled chemicals which caused him to contract a persistent cough, bronchitis and congestion. ... [On September 20, 1985] he was hospitalized by Dr. Michael Schendel, his family doctor for two (2) days with bronchitis and, after returning to work [for one four-day shift] was re-hospitalized [on October 7, 1985] this time for six (6) days. [Subsequently] he was seen by a pulmonary specialist, Dr. Philip S. Perret, who made a diagnosis of asthmatic bronchitis. After filing suit plaintiff was examined by Dr. Hans Weill, an expert in the field of pulmonary diseases, who concurred with Dr. Per-ret’s diagnosis. It should be noted that at this point plaintiff was and apparently still is a smoker.”
Plaintiff urges that before September 18, 1985, he was symptom free and able to work without restriction but beginning on September 18, 1985, the symptoms of the disabling condition appeared and have since been continuously manifest, such that he has not been able to return to the work force. Janice States, plaintiff’s wife, corroborated his testimony. However, she did admit that prior to September 18, 1985, plaintiff had “colds”, congestion and would often get “short of breath”.
States had been working for Grey Wolf for some eighteen months before September 1985. Although he had been previously injured while working for another employer, plaintiff neither reported any “accident” on September 18, 1985, nor did he ever fill out an accident report. Joseph “Slim” Arceneaux, the Grey Wolf tool pusher, testified that States, upon completing his regular shift on September 18th, stated that “he had bronchitis or something” and was not feeling well. Arcen-eaux also testified that plaintiff had missed work previously because of bronchitis but had never complained of any problems as a result of contact with chemicals used on the job.
Hoyt Pool, the driller with whom States worked, testified that appellant coughed and hacked from the time he started working for Grey Wolf but never complained to him that the chemicals around which they worked caused him any problems.
Dr. Phillip Perret, plaintiff’s pulmonary specialist, testified that, on States’ first visit, he gave a history of wheezing for the preceeding two years with a marked increase in degree for approximately two weeks prior to September 20,1985, the date of his first hospitalization. He also complained of marked shortness of breath for the previous three months, frequent colds, and chest congestion. Dr. Perret testified that he examined a list of chemicals, supplied by Grey Wolf, to which States was allegedly exposed and found no asthmato-genic substances (substances which would produce bronchial asthma in a previously asthma-free patient due solely to exposure to the chemical) on the list. The doctor did note that any kind of nonspecific irritant such as house dust, sand, pollen, chemical fumes or chemical dust would likely precipitate bronchial spasms in a person who has *1099 a bronchial irritation, be that irritation from asthma or some other cause. Dr. Perret’s initial diagnosis was that States had asthmatic bronchitis. This diagnosis was confirmed by the administration of a number of tests, including plumonary function tests and a methacholine challenge. His diagnosis remained unchanged at the time of trial.
Dr. Hans Weill, a professor of medicine at Tulane Medical Center and the Chief of the Medical Center’s Pulmonary Disease Section, examined States at the request of defendants. Dr. Weill also found plaintiff to be suffering from asthmatic bronchitis, and although refusing to state to an absolute certainty (“... one is ever 100 percent certain of anything in medicine ...”) was of the opinion that the etiology of State’s disease was not occupationally induced.
While both physicians were of the opinion that plaintiff’s exposure to non-specific irritants at work would exacerbate his symptoms, neither could state that his occupation caused or accelerated the natural progression of his underlying bronchial condition. In denying plaintiff’s claim, the trial court reasoned as follows:
“This Court finds that plaintiff has failed to prove that his present condition was more probably caused by exposure to chemicals at his employment than by his smoking habit. This Court notes that plaintiff’s condition was not dramatically improved since he left his employment and yet the chemical factor is no longer present. Considering plaintiff’s history of respiratory problems, the variable nature of this condition, and the consistency of his smoking this Court remains unconvinced that the chemicals used at defendant’s company caused plaintiff’s condition.”
In seeking a reversal of the trial court’s judgment, appellant relies on Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985). In Walton, supra, the Louisiana Supreme Court stated:
“As in other civil suits the employee in a worker compensation proceeding initially has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. Lucas v. Ins. Co. of N.A., 342 So.2d 591 (La.1977); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Malone & Johnson, 13 Louisiana Civil Law Treatise, Worker’s Compensation (2d ed.) § 256, p. 562. In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. Lucas v. Ins. Co. of N.A., supra; Malone & Johnson, supra. A claimant’s disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Lucas v. Ins. Co. of N.A., supra, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Haughton v. Fireman’s Fund American Ins. Cos., 355 So.2d 927 (La.1978); Cf. Thomas v. U.S. Cas. Co., 218 Ga. 493, 128 S.E.2d 749 (1962); Malone & Johnson, supra.
Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Lucas v. Ins. Co. of N. A., supra; Johnson v. Travelers Ins. Co., 284 So.2d 888 (1973); Larson, Workmen’s Compensation Law, § 12.21, p. 3-336. Correlatively, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection *1100 between the accident and the activation of the disabling condition, the employee’s work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Haughton v. Fireman’s Fund American Ins. Cos., supra; Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982).”
We have carefully examined the record in this case. We discern no clear error in the trial court’s conclusions and find Walton, supra, factually inapposite.
The plaintiff in this case failed to prove an “accident”, even in the broadest sense of the word. The record establishes no more than that upon completing his shift and starting for home, plaintiff complained to some fellow workers that he was not feeling well. When States returned to work after his September hospitalization, the crew was “rigging down” in preparation to move the rig. During that shift, plaintiff did no mixing of chemicals; yet following that shift, he was rehospitalized for a longer stay.
Further, the record clearly establishes that plaintiff was not symptom-free before September 1985. Both the testimony of co-workers and plaintiff’s own admissions (especially in his medical history to Dr. Perret) establish that States had a bronchial condition for several years prior to September 1985 and that the condition had been getting progressively worse. In fact, States was hospitalized for the condition in 1982.
While appellant argues that “[preexisting disease or infirmity ... does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease ... to produce ... disability for which compensation is claimed” (Walton, supra), we recognize that “[a]s in other civil suits the employee in a worker compensation proceeding initially has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence” (Walton, supra). The trial judge found that States failed in his initial burden. We find no manifest error in that conclusion.
Accordingly, for the reasons stated above, the judgment of the district court dismissing plaintiff’s claim at his cost is affirmed.
AFFIRMED.